And the first is numbers 19-1805 and 1806, Pennsylvania National Mutual Casualty Insurance Company v. New England Reinsurance Corporation et al. And we have Messrs. Leonard and Hummer. Whenever you're ready. Good morning. May it please the Court, my name is Jeffrey Leonard. I represent Everest Reinsurance Company. And with the Court's permission, I'd like to ask for, set aside three minutes of my time for rebuttal. That's fine. Thank you, Your Honor. Can I just ask, start off with a factual question? Is the first panel, does it still exist in this case? The first panel still exists. Has it been disbanded, in other words? Well, I think it depends upon what one means by the word disbanded. And we use words like defunct, as National does. Is it defunct? Defunct, disbanded. We use them colloquially. Those words don't carry any legal weight or significance. The established legal framework for determining the power and authority of an arbitration panel to act after it has issued an award is a functus officio doctrine. And there's no support, we're not aware of any cases, and Penn National hasn't cited any cases in which the Court considered questions such as whether the panel is disbanded or is still active or not. And in fact, if that were the test, and we were to use those words in their colloquial way, but in the legal realm, then virtually every functus officio case, by definition, the panel has issued an award. And one could say colloquially that the panel is disbanded and no longer exists because it's issued an award. You know, by analogy, let's say a district court issues an opinion, et cetera, and then sometimes they will close the case, mark it on the docket. And it has ramifications in certain instances as to whether you can go back to that district court for a clarification or not. So what I'm really asking, just as a matter, is the first panel, I know you're talking about the Latin term for legally whether it exists or not, but I'm trying to figure out, is it still able to make a decision, that group, that panel, is it still able to make a decision on procedural matters? As far as we know, the answer to your question is yes, Your Honor. We wrote to the panel, as the court is aware from the briefs and the appendix, we wrote to the panel within a couple of months of when Penn National demanded arbitration specifically against Everest. And that in turn, by the way, was roughly two weeks after Penn National had withdrawn its petition to confirm the first award by that panel. We wrote to the panel asking it to resume the arbitration, to resolve that aspect of the singular dispute of these lead paint losses under these same reinsurance treaties, resolve the aspect of that dispute that concerns Penn National's billings to Everest, to my client. Penn National responded, asserting that the panel does not have power or authority to act, and stating that they did not consent to the panel's jurisdiction. So we asked the panel to resume the arbitration, to consider this consolidation question, as well as the question of its own jurisdiction. Penn National refused to arbitrate, refused to arbitrate that consolidation and jurisdictional issue before the panel. And that's the basis for our application under Section 4 of the FAA to compel arbitration. Is part of your reason for seeking sealed documents the supposition that the issue of consolidation may have been addressed by the first panel? No, I don't believe that that issue was addressed by the first panel, but we don't know. It's conceivable that Penn National or the reinsurers in that first action raised the issue with the panel. We don't know one way or the other, Your Honor. Has the second panel been fully formed yet? No, it is not. Penn National appointed an arbitrator with their arbitration demand. And the same day or within a day or two of when we wrote to the first panel asking it to rule on consolidation and its jurisdiction, within a day or two of that, we responded to Penn National's arbitration demand and provisionally and alternatively named a party-appointed arbitrator in the event the first panel were to determine that it does not have jurisdiction to proceed. Now, there were eight reinsurance agreements here, is that correct, of various parties? Yeah, approximately eight, Your Honor. I'm not sure of the exact number. And the way these reinsurance agreements work is it's the same agreement and it's participated in by multiple reinsurers. Each reinsurer has its own percentage share of the whole. And these are reinsurance treaties spanning a period of years and also layers. Yeah, I've always thought of them as sort of a hedge, if you will, reinsurance agreements. But that's just another world. Yes, yes. I'm trying to analogize, too. Can you help us with Stoltz, Nielsen, and Lambs Plus? The Supreme Court has reinforced the idea that we should approach each arbitration as an individualized matter and it shouldn't be ordered to proceed if the parties didn't expressly agree to it. So when we look to the expressed language of the agreement here, and it sets out specifics for how each party appoints an individual arbitrator, how consistent with this language could we order Penn National to move forward with a prior arbitration unless and until it's decided to be the same would seem to be presumed different? Well, I think it's completely consistent, Your Honor, because if you parse through the arbitration clause in the reinsurance treaties, and an exemplar of that is in the appendix at page 858, the first paragraph defines what a dispute is. And a dispute is defined without reference to an arbitration. A dispute or other matter in question between the reassured and the reinsurers, note the plural, shall be settled by arbitration. I had some ellipsis there. Shall be settled by arbitration. And then the next paragraph says that if more than one reinsurer is involved in the same dispute, all such reinsurers shall constitute and act as one party for purposes of this article. So the reinsurers acting as one party are responsible under the reinsurance agreement and under this arbitration clause to appoint an individual as a party arbitrator on behalf of that group of reinsurers who are involved in the same dispute. Did you participate in the selection of the arbitrator for the reinsurers for the first panel? No, no, we did not. We did not know about that arbitration until after Penn National served this demand on Everest. So are you suggesting by your reading that where there are a series of arbitration disputes, that whoever by happenstance is the first reinsurer gets to make the one and only selection for a single arbitration panel that decides all disputes under the treaty? Well, the way it should work is that from the inception, from the get-go, all the reinsurers are named in the arbitration demand and all the reinsurers participate in selecting a party appointed arbitrator. You know, there are other reinsurers that participate in these treaties besides my client and the two reinsurers that were the subject of the first panel's initial award. We don't know what is happening with those other reinsurers. Penn may have settled with some of them, and Penn may be in other arbitrations with others of those reinsurers. And Penn National and some of those other reinsurers may, between themselves, waive the right to enforce the consolidation clause, which we believe is a mandatory consolidation clause. They may waive the right as between them to enforce it, but that's not something that would be binding on my client or any other reinsurer. Well, the mandatory consolidation clause goes to the same dispute, but we're not in a position to go to the merits to determine whether this is the same dispute, right? No. That's not something the panel has to decide. I agree with you completely, Your Honor. It's very clear that that is an issue of contract interpretation and of arbitration procedure. What kind of arbitration did the parties contract for? And it's very clear under the Supreme Court precedents and precedents of this and other courts that that is an issue for the arbitrators to decide. I don't want to speak for Judge Krause, but I think I have the same concern, which is 27B is if involved in the same dispute, but that's an if.  It can't be a court. You are saying we can just assume it, go to the first panel, let the first panel bounce it, but doesn't there need to be some arbitration panel impaneled in keeping with the procedure in the treaties that determines that as a threshold question? I think that's what Judge Krause is asking and certainly what I'm asking, and I don't hear how you've given an answer as to how we can just breeze past that or assume that or default to the first panel. Oh, I agree with you that that is a question for a panel to decide whether it is the same dispute and whether and how the consolidation clause of the treaty applies. The question for a panel, why the first panel? Because the first panel assumes the answer to the question by taking it to the panel that only has jurisdiction if it's the same. Well, all of the cases. What cases? What's your best authority? The Aegis case. Where? The Aegis case was the Middle District of Pennsylvania. The issue of certain underwriters and Aegis is that that threshold panel did have a single issue, that threshold issue to decide that was the same question. If there were, if this were ab initio, that an arbitration panel that had to decide both whether these two disputes were the same dispute, and then if it or another panel was going to handle the actual merits, then you'd have a parallel with those cases. But here the first panel has gone all the way through and has issued its final award. How could there be the same issue before that panel where the first arbitration, in effect, no longer exists? It's for all purposes done. Judge Cross, I think that those are two distinct legal questions, legal issues. One is which panel should this consolidation question go to? And the cases, Judge Bevis, just to finish my response to your question, the Aegis case, Middle District, Pennsylvania, 2015, Arrowwood Indemnity, Western District, North Carolina, 2012, these are all cited in our briefs. Okay. These are district court cases. They're not binding on us. Why should they persuade us? Correct. They're not binding on us. Shaw Supermarkets, First Circuit, 2003, and this court's decision from 2007 in certain underwriters at Lloyds against Westchester Fire. But I was saying there are two distinct questions. One is which panel should it go to? And the cases that I cited to Judge Bevis all have it go to the first panel. But that's where the threshold issue that's common as to whether or not it should be decided by the same panel. The consolidation, the threshold consolidation issue, in other words, in those cases was common to the parties that were before the court. It's not common to Hartford because that arbitration is done. So how can we assume and how do these cases help you with saying that the first panel on the basis of these can decide what seems like a new issue, a new dispute concerning the threshold question? That's for the arbitrators to decide whether it, in fact, is the same dispute or not. And the first question, as I said, is which panel should make that determination? There's nothing under the FAA, Federal Arbitration Act, or under the contract that allows Penn National to reject a panel that has been fully formed and require Everest to select a second additional panel. The question is what's the default? Now, the only circuit of theory you've got are Westchester Fire and Saw Supermarkets. Westchester Fire, everyone agreed the two tripartite panels were required by the treaties. There's not that agreement here, okay? And in Shaw's, there was a single AA arbitrator. Everybody agreed they'd have jurisdiction over all the claims. Here, you agree an arbitrator has to decide, but you're presuming the answer to your question, which is it has to go back to the first panel. And I think we've both been asking versions of the same question, not hearing an answer about how you can get it back to the first panel unless we can implicitly decide it's the same, but you've conceded we can't decide that. No, that's clearly a decision for the arbitrators to make. Right. And in situations such as this or in the cases that I've cited, and for that matter that Penn National cites in their brief, in those cases the court has to make a decision, which arbitrator are we going to send it to? And the cases all, and Penn National hasn't cited any contrary authority judge, the cases all send it to the panel that was first formed. The second distinct legal issue, of course, it has to be decided is whether the panel is functus officio, because if the first panel were to be functus officio, then even though the case law otherwise would have the case go to the first panel to decide the consolidation issue, obviously it can't if the panel's functus officio. I'm happy to answer further questions, but I do see my time is up, and I'd be happy to address further questions now or on rebuttal if the court wishes. Thank you. Good morning. Paul Hummer from Saul Ewing for Penn National. I guess I would like to start where you left off unless there's someplace else you'd like me to start. Is there, was there opposition to going back to this first panel to decide the procedural issue on consolidation? Is there opposition to it? From your side? Yes, there is. And why? Well, we don't think that that's what the contract calls for. We don't think that that's the right panel to resolve the dispute between Penn National and Everest. Well, you moved at one point to confirm the first panel's decision, is that correct? That's correct. Very briefly, yes, we did. And the reason that you put a stop to that is what? Your Honor, the Penn National and, it's not in the record, but Penn National and the Hartford companies reached a settlement four days after the petition for confirmation was filed, and the petition for confirmation was withdrawn. Okay. So. Your Honor. The second panel, is your opposing counsel correct, the second panel has not yet been formed? Each side has appointed, a party appointed arbitrator, and umpire has not been selected. Okay. That is correct. Mr. Emmer, why shouldn't we read the plain language of this agreement along the lines that Mr. Leonard has suggested? That is, 27A deals with any dispute at all, and it deals with the reinsurers, plural. C says that each party shall appoint an individual arbitrator, and B seems to deal with a unique circumstance where more than one reinsurer is involved in the same dispute, in which circumstance the reinsurers are required to act as a single party. In other words, that appears to be to shield Penn National, to protect it from having to litigate on multiple fronts if it's the same dispute. But nothing here would seem to preclude a reinsurer from electing to proceed as, in the same matter, as if it were the same dispute, which is all they seem to be seeking here. Your Honor, I think the question is whether, you asked whether a reinsurer could elect to proceed in a common arbitration. It could elect that. The question is whether it's required to do that, and the question is whether it's the same dispute. In this case, each reinsurer signs the same treaty, but its liability is separate and distinct, under the terms of the treaty, and there's no dispute about that. So it's as if there is a separate contract between Penn National and each reinsurer. That clause, I would suggest to you, is intended to operate in a situation like the Hartford arbitration, where there were two reinsurers, but they were affiliates, and they acted as a single party to the arbitration for purposes of the Hartford arbitration. It does not make the dispute between Hartford and Penn National the same as the dispute between Penn National and Everest, and it does not mean that the fact that Penn National might have a dispute with Everest means that it has a dispute with every reinsurer. But didn't you, at pages two to three of your own brief, you say that it's a single treaty for each layer? It's just each layer is a single treaty, but because the liabilities of each signatory are separate and distinct. Well, that's a different, I mean, that's just, okay, you're responsible for X, you're responsible for Y, but the contracts are the same. The contracts are the same. So if it's a single contract governing its multiple insurers, that single contract speaks in the plural about reinsurers, and you agree that the reinsurer could elect to proceed as if it were the same dispute. Why don't we have that case here? I don't think you do, Your Honor. The Hartford dispute was initiated by Hartford solely with Penn National. The issues presented were solely those between Hartford and Penn National. The award is solely between Hartford and Penn National. There is no suggestion by Everett's that the award affected its rights in any fashion, or adjudicated its rights. What were the issues in that first arbitration? They were the question of whether or not the losses were covered under the terms of the treaty, Your Honor. And so what are the issues you perceived will exist with Everett's? They are similar, but those disputes have not matured into briefing, and whether the panel will resolve them on the same grounds, whether the same issue defenses will be presented by Everest, the participations are not identical. The issues are certainly similar. They are the same underlying losses. But Everest is a participant in some years on some layers where Hartford is not. Hartford is a participant in some years in some layers where Everest is. So if the issue is not necessarily identical, but conceivably may be, just as a matter of efficiency, why not go back to the first panel, especially as the second panel has not yet been fully formed? Your Honor, I think the question is whether there is a contractual obligation to go back to the first panel. I don't respectfully think it's quite an efficiency issue. Each party has the right under the contract to pick the panel members. And you may be right. There may not necessarily be a duty, but why not let the first panel decide whether there should be consolidation or not? Maybe the first panel will say, nope, shouldn't go to the second panel. I think there are two issues there, Your Honor, both of which have been alluded to in the questioning here. Number one, there is a question about whether the first panel exists. The record is that the first panel rendered its award, that Everest wrote to the first panel. It has never responded. But that award, you moved to confirm it, but then you withdrew it, so it technically hasn't been confirmed yet, correct? The award has not been confirmed. There is no further proceeding related to that award. Because of the settlement? Yes, and no further proceeding related to that dispute. That dispute is conclusively resolved. I think the second question, Your Honor, is why not go to the first panel, which is the question that both Judge Krause and Judge Bevis were asking, which is you really cannot get to the first panel unless you make a determination about whether or not this is the same dispute. But again, going back to the language of this agreement, if it's the same dispute, then the reinsurers are required, shall constitute an act as one party. But where it's not, then aren't we just dealing with like A and C? Each party shall appoint an individual arbitrator. Penn National did that. As a party to this single treaty for the layer, it selected its arbitrator. And while Everest would be required to litigate in the same, before the same panel, if it were the same dispute, nothing here precludes them from electing to do so. Your Honor, I think Everest, Penn National selected its arbitrator for its dispute with Everest. It selected a different dispute with Hartford. It has selected a different arbitrator for its dispute with Everest. It's entitled, at least under our reading of the contract, to do that. And I think that that is the right that Penn National sought to enforce when it filed its petition to compel. Your Honor, every court that has considered the question of which panel in these cases has struggled with the issue that you have both identified. How can the court fulfill its duty to direct the parties to arbitrate and at the same time avoid what would be an impermissible determination as to whether this is one dispute, multiple disputes. It should be consolidated or it should not be consolidated. At the very least, there's overlap in these disputes, right? Yeah, there is, Your Honor. And I think... Would your position be different if the first panel had been disbanded? In our view, the first panel is disbanded, Your Honor. But I think that... But let's say it's... Does it make a difference if the first panel is disbanded or isn't disbanded? Which we're not really sure of. You've given us some reason to suspect this. I think that the... If... In this case, the first panel... It's not just a question whether the first panel has disbanded. It's also a question of whether the first panel had an ongoing arbitration or not. In this circumstance, by the time Evers went to the first panel, the first panel had already rendered its award. That is factually distinct from every other case that they cite. Let's say we're not sure. Why shouldn't we... Is it the district court that should be making the fact findings here? You've given us a few telltales. It's... You know, you and your brother seem to agree that it's not 100% clear here. Why is this something we should be dealing with in the first instance? Your Honor, I think what the district court did here was to follow what the Federal Arbitration Act directs him to do, which is to direct the parties to arbitrate and to direct the parties to follow the arbitration selection procedure in the contract, which is we appoint one, they appoint one, and the two of them pick the umpire. That's what the district court did specifically to avoid having to make the determination about whether this was the same dispute, whether this was something that should be consolidated or should not be consolidated. And that, in my view, is the correct decision when confronted with the circumstances of, yes, there was a prior arbitration between different parties, pursuant to which there was an award. Now there is a dispute between Penn National and Everest. What should the district court do? Well, the FAA is pretty clear that the district court's obligation is simply to direct the parties to follow the contractual process for appointment of an arbitrator and let that panel decide what to do about consolidation. Would your view be different if both Hartford and Everest were at the outset of arbitration? Your Honor, we would not view it as being the same dispute. But isn't there at least the same dispute, not to get too metaphysical, but as to the threshold issue of whether it's the same dispute, at least that would be in common with the arbitrators at that point, right? Well, it would be in common, but it wouldn't because there would be different parties. In other words, so if you look at the case, for example, Arrowwood Indemnity is a case that Everest relies on. Those were three disputes between the same parties. And with the exception of the Aegis decision, every one of the cases they cite is a dispute between the same parties and the question as to whether it should be consolidated or not. That's fundamentally different than a dispute between two completely independent entities. But at that point, wouldn't it fall under paragraph B? I don't know that it would. All dealing with the same question of whether it was the same dispute. We would not view it as the same dispute. I think that's the point. In other words, it would because whether Hartford pays or doesn't pay has nothing to do with Everest's obligation to pay or not pay. Whether the panel orders Hartford to pay or not pay has nothing to do with whether a panel orders Everest to pay. Their obligations are separate and distinct. That would read paragraph B out of existence. They are based on the same contract and the underlying claims are the same. But from my perspective at least, the contract is intended to address the situation in which there are multiple reinsurers involved in a dispute and to address the procedure for that. But it is not intended to require or make mandatory that disputes with different reinsurers all occur in the same proceeding. Mr. Leonard said, well, it was an obligation to name every reinsurer in the Hartford arbitration. In fact, the arbitration was initiated by Hartford, not by Penn National, and not every reinsurer was in dispute. It would make the reading of the contract silly  to pay mandatory parties to an arbitration for a reinsurer who doesn't agree with that. Was there any notice given to Everest of the Hartford arbitration? There was not. And the reason for that? Everest, from our perspective, is not involved in and was not involved in the Hartford arbitration. We do not read the contract as requiring it. I will tell you, we made this representation to the judge below. The Hartford arbitration is not the only arbitration that Penn National has been involved in under these treaties related to these losses. There have, in fact, at the time that we were before the court below, there were three, a total of three different arbitrations, not including the Everest arbitration, with fully formed panels. Today, there are four. All of those proceedings are concluded, but it's not as if anyone other than Everest regarded this as a mandatory consolidation. Each one of those disputes was regarded by the parties as a dispute between the two parties, not the reinsurers collectively. Before you sit down, unless there's any other questions that my colleagues have, do you wish to address anything relating to the sealing or unsealing of the documents in light of Avendia? Yes, Your Honor, if I could very briefly. It would be our request. I think the issue there, obviously the parties did not have the benefit of the Avendia decision. The court did not have the benefit of that. The question is whether you can or should affirm the result without affirming the process by which Judge Jones got there. Our view, and I'll try to be very brief, is that the applicable standard here is the common law standard because the First Amendment standard has never been extended to a proceeding of this type and I think probably shouldn't be. Under the common law standard, the question is whether the award that was attached to the application to confirm should be treated as a judicial record under the circumstances of this case. I think our view is that under the New Jersey media decision, it should not. New Jersey media suggests that there is a functional analysis applied. In this case, the critical factors are, number one, that the FAA requires that the award be attached to the confirmation proceeding and, two, that the confirmation proceeding was withdrawn four days after it was filed and before the court took substantive action. We think under the circumstances that that would, that means that essentially it's almost a nullity in a sense. Are the sealed documents discovery materials or what? They are not discovery materials. What we're talking about here practically, Your Honor, is the award in the Hartford arbitration. I think they're akin on some level to discovery materials for analytic purposes, but they're not purely discovery materials. Let me try to put it in perspective. The purpose of the Federal Arbitration Act is to promote arbitrations. The principal value to the parties to an arbitration is the confidentiality. If the mere act of filing a petition to confirm, which must include the award, made that award a public record, even if the court takes no action, so simply the act of filing it, that would vitiate the very purpose for which parties engage in arbitrations, would be completely contrary to the public purpose that is embodied in the FAA, and I think it would be inconsistent with the public principles that underlie the common law right of access. The common law right of access is intended to ensure that the public can have confidence in the integrity of the courts, can understand why the courts did what they did. Here, the court did nothing, and I think in that circumstance, the mere act of filing the award in a proceeding that was withdrawn within days should not have got a public record. All right, thank you very much. Thank you. Mr. Wood. I just have a few comments. The distinction between discovery materials and non-discovery materials is the right distinction, in our view, with regard to the sealing issue, and the New Jersey media case applies the functional test to discovery type materials, not to non-discovery type materials, and there's a lot of sense to that because with non-discovery type materials, you're dealing with the core function of a court to decide the dispute, and we don't want to have, I don't think that we want to have a situation where when these sealing issues come up, a court has to try to get into the mind of a district judge to determine whether the judge used or relied on particular materials or not. On the issue of the petitions. What about the point that arbitrations are meant to be private? Well, arbitrations are meant to be private, but that does not mean that that privacy holds when you get into court on petitions to confirm and vacate, for example, or on pre-arbitration litigation over panel composition and the type of dispute that we have here. The articles that Penn National cited for the proposition that arbitrations are confidential go on to point out that the trend, the increasing trend is that when a party goes into court relating to the arbitration, that the confidentiality of those documents is, with increasing frequency, not upheld when it's filed in court, because the courts, of course, have their own rules that they are abiding by. My brother referred to the district court decision to require the appointment of a new panel and said that the district court did that to avoid deciding whether it was the same dispute. But, of course, it's really two sides of the same coin. By making that decision, the district court interpreted the contract and concluded that this is not the same dispute, and so he required the parties, district judge required the parties to select a new panel. On the issue of being inactive and disbanded, I would just refer the court to this court's 1967 decision in the LaValle Plaza case. Kind of hard to imagine a clearer statement by an arbitration panel that it's finished. The arbitration award in that case provided that it was in full settlement of all claims. Nonetheless, the district court sent the matter back to that panel to decide whether and how the award that that panel had issued took account of a deposit that was made prior to the award. Applying Funcus Officio doctrine, this court, some three and a half years after the award, affirmed the district court's decision so that three and a half years later, the parties were going back to that panel for further adjudication. I see my time is up. If there aren't any further questions, I thank the court for his time. Thank you. Thank you to both counsels. Very well presented argument. Appreciate it, Your Honor. I'm going to take the matter under advisement.